JSO

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 0212 | **DATE** | February 5, 2002 |
| **CASE TITLE** | *Alberta Raymond vs. City of Chicago* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendant's motion for summary judgment [17-1]. Final judgment is entered in favor of defendant, City of Chicago, and against plaintiff, Alberta Raymond. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | FEB – C 2002 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 30 |
| ✓ | Mail AO 450 form. | | LS | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | U.S. DISTRICT COURT | | date mailed notice | |
| CW7 | courtroom deputy's initials | 02 FEB -5 PM 5:48 | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALBERTA RAYMOND,                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )     **Case No: 01 C 212**
                                          )
CITY OF CHICAGO,                          )     **Judge James H. Alesia**
                                          )
                    Defendant.            )

DOCKETED

FEB - 6 2002

## MEMORANDUM OPINION AND ORDER

Currently before the court is defendant City of Chicago's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, the court grants defendant's motion.

## I. BACKGROUND[1]

Plaintiff Alberta Raymond ("Raymond") brings this suit, claiming that defendant City of Chicago ("the City") retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Particularly, Raymond claims that the City

---

[1] Unless otherwise indicated, the following facts – taken from the parties' Local Rule 56.1 statements – are undisputed. Defendant cites the requests for admission served upon plaintiff as evidentiary support for many of the facts that it asserts in its Local Rule 56.1 statement. Because plaintiff failed to respond to those requests for admission within thirty days, the facts contained therein are deemed admitted. FED. R. CIV. P. 36(a). Seventh Circuit precedent is clear that default admissions can serve as the factual predicate for summary judgment. *Hart v. Dow Chem.*, No. 95 C 1811, 1998 WL 151815, at *4 (N.D. Ill. Mar. 27, 1998) (citing *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)). Therefore, the court deems all facts asserted in defendant's requests for admission to be admitted by the plaintiff and will consider those facts undisputed.

30

committed the following retaliatory acts against her: (1) the City entered into a collective bargaining agreement ("CBA") on April 21, 1999, which governed promotions to captain; (2) Chicago Police Department ("Department") Superintendent Terry Hilliard ("Hilliard") did not appoint her to commander in March 1999, February 2000, and May 2001; and (3) Hilliard did not promote her to captain in December 2000 and January 2001. Raymond claims that the alleged retaliation was motivated by her: (1) filing a charge with the Equal Employment Opportunity Commission ("EEOC"); (2) being a plaintiff in a lawsuit against the Department; and (3) being promoted to lieutenant by court order. In order to understand the court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in five parts. Part A describes Raymond's employment history with the Department and the process used in 1994 to promote officers to lieutenant. Part B discusses the impact of a prior lawsuit upon Raymond's career advancement. Part C describes the circumstances surrounding Hilliard's not selecting Raymond for a commander appointment. Part D describes the 1999 CBA that regulated promotions to captain in the Department and Raymond's unsuccessful application for promotion to captain. Part E describes the current lawsuit.

## A. Raymond's Employment History with the Department and the 1994 Lieutenant Promotion Process

Raymond is an African-American female lieutenant in the Department. She was appointed to the Department on December 11, 1978 and promoted to sergeant in December 1988. During her career, she has held a number of different positions in the Department and has performed duties both in field and administrative positions.

Raymond applied for promotion to lieutenant in 1994. The 1994 examination for promotion to lieutenant consisted of three components, and an applicant's scores from the three components were combined into a final score. In 1994, 765 Department sergeants, including Raymond, took all three components of the examination. The Department promoted to lieutenant the 108 sergeants with the best scores on the examination. Raymond, whose score placed 298th out of the 765, was not promoted to lieutenant due to her performance on the examination.

Also in 1994, the Department announced that it would promote additional sergeants to lieutenant, based on a merit selection process. In merit selection, senior members of the Department would nominate candidates to the superintendent, and the superintendent would promote some of those candidates from sergeant to lieutenant. From the nominations he received in 1994, then-Superintendent Matthew Rodriguez selected thirteen sergeants for promotion to lieutenant, including Raymond, Joseph Blas ("Blas"), James Collier ("Collier"), Lucio Martinez ("Martinez"), Arthur Parra ("Parra"), and Phillip Richardson ("Richardson").

Since being promoted to lieutenant, Raymond has worked as a field lieutenant and as an acting watch commander, which is ordinarily the primary responsibility of a captain. On two occasions, however, Raymond has been criticized or reprimanded for her performance as watch commander.

## B.  *Brown v. City of Chicago*

On March 28, 1995, four Department sergeants filed a lawsuit in this district alleging that the 1994 lieutenant examination process discriminated against minority sergeants. *See Brown*

3

*v. City of Chicago*, 917 F. Supp. 577 (N.D. Ill. 1996). On April 12, 1995, Raymond filed a charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). In that charge, Raymond alleged that the 1994 lieutenant examination violated Title VII because it had an unlawful disparate impact upon minority sergeants. On or about May 15, 1995, approximately forty-four other minority sergeants filed similar charges of discrimination. On December 5, 1995, the plaintiffs in *Brown* amended their complaint, adding forty additional plaintiffs, including Raymond. Judge Gettleman ruled that the 1994 lieutenant examination was job-related and consistent with business necessity but that the City violated Title VII by not including a merit selection component in the 1994 examination process. *See Brown v. City of Chicago*, 8 F. Supp. 2d 1095 (N.D. Ill. 1998). The court then asked the parties to address the issue of relief. The City argued that the court should order that Raymond be promoted to lieutenant because she alone among the forty-four named plaintiffs had demonstrated that she would have been promoted based upon the merit selection plan. The City opposed any other court-ordered promotions.

Judge Gettleman ordered the City to promote and grant back pay to all thirteen of the sergeants that had been chosen for promotion based upon merit selection (the "merit promotees"), including Raymond. The court ordered that the promotions be retroactive to April 6, 1995. *See Brown v. City of Chicago*, 19 F. Supp. 2d 890, 892 (N.D. Ill. 1998). Former Department Deputy Superintendent James Whigham testified that the general counsel announced these merit promotions at a morning meeting but did not mention the names of the promoted

personnel. Six of those thirteen merit promotees have subsequently been promoted to captain or an exempt position.

## C.  Raymond has not Received a Commander Appointment

Although Raymond claims that she is qualified for appointment to an exempt position (commander),[2] Hilliard has not selected her for such an appointment. Raymond argues that she should have been promoted to commander instead of three other African-American female officers, who received their appointments in March 1999, February 2000, and May 2001. She believes that Hilliard did not select her for one of these appointments out of retaliation.

The Superintendent of police has discretion to appoint officers to exempt positions. Hilliard testified that, when determining which officers he should promote to commander, he considered their integrity, character, morals, and values. He also considered the officers' background in the Department, particularly any actions the officers had taken to improve Department operational procedures. Additionally, Hilliard looked at how the officers interacted with young police officers as well as with citizens. He focused particularly upon which officers he considered to be team players and whether the officers were able to carry out the mission of the Department.

---

[2] In the Department, officers above the rank of captain are referred to as "exempt" personnel. Both captains and lieutenants in the Department are eligible for appointment to exempt positions. All three of the exempt positions to which Raymond claims she should have been appointed are titled "commander." For the sake of simplicity, the court will use the term "commander" instead of "exempt position." Likewise, because an appointment to an exempt position is, for the purposes of this case, a promotion, the court will use the word "promotion" to refer to Hilliard's personnel decisions with regard to both commander and captain.

Hilliard testified that Raymond's April 12, 1995 EEOC charge against the Department, her being a plaintiff in *Brown*, or the fact that she was promoted to lieutenant by Judge Gettleman's 1998 court order were not factors in his not promoting her to commander. Hilliard testified that he did not select Raymond because he did not believe that she was a team player, she did not share his vision of the Department, and he did not have confidence in her.

On July 17, 2000, Raymond filed a charge of discrimination with the State of Illinois Department of Human Rights and the EEOC. In that charge, she alleged that the Department had retaliated against her by not promoting her to an exempt position because (1) she achieved her rank of lieutenant through a court order and (2) she filed her April 12, 1995 EEOC charge. This July 17, 2000 EEOC charge provides the basis for this action.

## D. The Collective Bargaining Agreement and Raymond's Unsuccessful Application for Promotion to Captain

Since April 21, 1999, the CBA has governed promotions to the rank of captain in the Department. The CBA expressly grants the Superintendent of Police discretion to make promotions to captain and requires a lieutenant to complete two years of service before applying for promotion to captain.

A dispute arose regarding whether the merit promotees from *Brown* fulfilled this two-year requirement by means of their court-ordered retroactive seniority. The merit promotees, challenging the two-year requirement as inconsistent with their retroactive promotions from *Brown* filed a motion to enforce Judge Gettleman's order. When the City agreed that it would not dispute that the merit promotees met the two-year requirement, the merit promotees withdrew their motion. Although Raymond alleges in her complaint that the CBA was one of

the City's retaliatory acts against her, she admits that she did not suffer any adverse employment action as a result of the CBA.

On July 21, 2000, Hilliard outlined the application procedures for promotion to captain and instructed interested lieutenants to complete and submit application forms. Raymond submitted an application but was not selected for promotion by Hilliard. Raymond alleges that the City retaliated against her when Hilliard did not promote her to captain in December 2000 and January 2001.

In his deposition, Hilliard described his process for deciding which lieutenants he should promote to captain. First, he sorted the 188 eligible applicants into three categories: most qualified, qualified, and not qualified. As part of that initial analysis, Hilliard determined that Raymond was not qualified for promotion. In his first promotion order, dated December 29, 2000, Hilliard promoted thirty-three lieutenants to captain. After the first set of promotions, he reviewed all the remaining applicants, including those whom he had initially disqualified. In the second promotion order, dated January 30, 2001, Hilliard promoted an additional thirty-five lieutenants to captain.

According to Hilliard's testimony, he determined that Raymond was not qualified for promotion to captain based upon his beliefs that: (1) Raymond did not share his vision of the Department; (2) her skills and expertise were not at the level necessary for promotion at that time; (3) she was not a "team player;" (4) she had not mentored and tutored her subordinates; (5) she did not have sufficient field experience; (6) she did not have the proper demeanor to interact with officers and the command staff; and (7) he did not have sufficient confidence in

Raymond to promote her. According to Hilliard, he did not consider or even know about Raymond's April 12, 1995 EEOC charge, her being a plaintiff in *Brown*, or the fact that she had been promoted to lieutenant by Judge Gettleman's 1998 court order.

## E.     The Current Lawsuit

Raymond filed this lawsuit claiming that the City violated Title VII by retaliating against her for engaging in protected conduct. She claims that it retaliated against her when: (1) it entered into the CBA; (2) Hilliard did not appoint her to commander in March 1999, February 2000, or May 2001; and (3) Hilliard did not promote her to captain in December 2000 and January 2001. The City does not dispute that she filed her complaint within ninety days of receiving her right to sue letter in response to her EEOC charge of July 17, 2000, in compliance with 42 U.S.C. § 2000e-5(f)(1).[3] The City now moves for summary judgment arguing that: (1) some of Raymond's claims are time-barred; (2) Raymond cannot establish a *prima facie* case of retaliation because she cannot prove a causal link between her allegations of protected activity and any adverse employment action by the City; and (3) Superintendent Hilliard had legitimate non-retaliatory reasons for not promoting Raymond to captain.

---

[3]Raymond did not attach a copy of her right to sue letter to her complaint. Although Title VII requires that a claimant be notified of her right to sue before filing a complaint, it does not state any requirement that a plaintiff attach the right to sue letter to her complaint. 42 U.S.C. § 2000e-5(f)(1). *Finley v. Ill. Dep't of Pub. Aid*, 97 C 3381, 1998 WL 26156, at *3 (N.D. Ill. Jan. 12, 1998). *See also Ichile v. City of Chicago*, 95 C 3507, 1996 WL 264708, at *4 (N.D. Ill. May 16, 1996) ("[A]ttaching a right to sue letter to a complaint is not required to survive a motion to dismiss."). In this case, Raymond alleges in her complaint that she is filing the complaint within ninety days of receiving her notice of her right to sue. (Compl. ¶ 11.) Defendant, in its answer, admits that a right to sue letter was issued on October 20, 2000. (Ans. ¶ 11.) Thus, based upon the representations of both parties, the court will assume that Raymond's right to sue letter in this case was issued on October 20, 2000.

## II. **DISCUSSION**

### A.     Standard for Deciding a Motion for Summary Judgment

It is proper for a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson,* 477 U.S. at 256. Once the moving party presents a *prima facie* showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 256-57; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989).

### B.     Raymond's July 17, 2000 EEOC Charge

Before addressing the merits of Raymond's Title VII claims, the court must first determine which of these claims are properly before the court. Raymond, in her complaint, cites the following allegedly retaliatory acts by the City: (1) entering into the CBA on April 21, 1999;

(2) refusing to appoint Raymond as commander in March 1999, February 2000, and May 2001; and (3) refusing to promote Raymond to captain in December 2000 and January 2001.[4] Raymond's claims regarding the CBA and the March 1999 commander appointment may not have been timely asserted in an EEOC charge because the July 17, 2000 EEOC charge upon which Raymond received her "right to sue" in this case alleges only that the City retaliated against Raymond by not selecting her for an exempt position and does not mention either the CBA or the captain promotions. Further, the EEOC charge was filed before the December 2000 and January 2001 captain promotions and the February 2001 commander appointment and Raymond's claims arising from those events may not fall within the scope of her July 17, 2000

---

[4]Raymond's complaint states:

> The first act of retaliation occurred ... when [the City] entered into an agreement .... The second act of retaliation is the continuing refusal of [the City] to consider fairly plaintiff for selection to an exempt position .... The third act of retaliation occurred ... when plaintiff was not among the lieutenants selected for appointment to the rank of captain.

(Compl. ¶¶ 7, 9-10.)

Inexplicably, Raymond, in her memorandum in opposition to motion for summary judgment focuses her arguments exclusively upon her not being promoted to captain. In her memorandum, she states:

> Plaintiff does not advance any claim that defendant retaliated against her by not selecting her for an exempt position. Nor does plaintiff assert any of the hypothetical (and time barred) claims discussed by defendant in its memorandum. *The sole claim at issue in this case* involves selection for the position of Captain.

(Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 1.) (emphasis added). Although this statement could be construed as a voluntary dismissal of Raymond's claims based on the commander position and the CBA, the court will still address these claims because they fail on the merits for reasons discussed *infra* Sect. II.B.1. and II.C.

EEOC charge. In determining which claims are properly before the court, the court will first look at the timeliness of Raymond's claims and then determine which claims fall within the scope of her EEOC charge.

### 1.   The timeliness of Raymond's claims

The City argues that the claims regarding the CBA and the March 1999 commander appointment are not timely because Raymond did not assert them in an EEOC charge within 300 days of their occurring. Raymond does not oppose the City's arguments on this point. The court concludes that both claims are time-barred.

In Illinois, a Title VII plaintiff must file a charge with the EEOC within 300 days of the alleged discrimination. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, Nos. 00-2467, 00-2587, 00-3098, 2001 WL 1381076, at *7 (7th Cir. Nov. 7, 2001). As a general rule, therefore, a court cannot consider events that occurred more than 300 days prior to the plaintiff's filing her charge. *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 702 (7th Cir. 2001). The continuing violation doctrine, however, allows a Title VII plaintiff to obtain relief for discriminatory acts that occurred before the 300-day limitations period if the plaintiff can link those acts with prohibited conduct that did occur within the 300-day period. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). The court must first determine whether the CBA and the March 1999 commander appointment occurred more than 300 days before Raymond filed her EEOC charge. The court then must determine whether either of the two events was part of a continuing violation.

Any retaliatory conduct that occurred before September 22, 1999 – 300 days before Raymond filed her July 17, 2000 EEOC charge – is time-barred. The City and the Captain's Association entered into the CBA on April 21, 1999, and the potentially untimely commander appointment occurred in March 1999. Both these events fall outside of the 300-day period. Thus, both these claims by Raymond will be time-barred unless they are part of a continuing violation.

The continuing violation doctrine applies only where it would be unreasonable to expect the plaintiff to sue before the 300 days had expired, such as when the plaintiff could recognize the actionable nature of the conduct only in light of subsequent, additional events that occurred within the statutory time period. *Id.* The doctrine does not apply, however, where the plaintiff knew or "with the exercise of reasonable diligence would have known" about the discriminatory nature of the employer's actions. *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir. 2000) (quoting *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir. 1993)). The Seventh Circuit has held that not being promoted is like being fired, demoted, or receiving a retaliatory job transfer because they are all single events, not continuing acts, and the retaliatory character of those events should be apparent at the time of the decision. *See Place*, 215 F.3d at 808. As discussed below, the March 1999 commander appointment and the execution of the CBA were isolated and significant events to which the continuing violation doctrine does not apply.

Any possible retaliation that motivated the decision not to promote Raymond to commander in March 1999 should have been apparent to Raymond at that time, and she should have asserted that claim in an EEOC charge within 300 days. *See Guerra v. Ill. State Police*, No.

01 C 2839, 2001 WL 1002489, at *3 (N.D. Ill. Aug. 30, 2001) (concluding that continuing violation doctrine did not apply to police officer's time-barred complaints that state police department discriminated against him in not promoting him to lieutenant because each denial of a promotion constituted a "separate and concrete discriminatory act," from which the discriminatory character should have been apparent).

Likewise, Raymond knew of the potentially retaliatory nature of the CBA when it was executed in April 1999. Raymond and the other merit promotees from *Brown* challenged the CBA in their October 1, 1999 motion to enforce Judge Gettleman's order. Because Raymond joined in this motion, the court concludes that she knew of the potentially retaliatory character of the CBA at that time. Therefore, the continuing violation doctrine does not apply to Raymond's claim regarding the CBA. *See Place*, 215 F.3d at 808 (holding that the continuing violation doctrine does not apply where plaintiff knows at the time of the act that it was discriminatory and that it harmed her) (quoting *Moskowitz*, 5 F.3d at 281-82). Because Raymond did not assert her claims regarding the March 1999 commander appointment and the CBA in an EEOC charge within 300 days and because the continuing violation doctrine does not apply to these claims, the court deems them time-barred. Therefore, the court grants the City's motion for summary judgment on Raymond's claims regarding the CBA and the March 1999 commander appointment.

## 2.  The Scope of Raymond's EEOC Charge

Raymond did not assert her claims regarding the December 2000 and January 2001 promotions to captain or the May 2001 commander appointment in her July 17, 2000 EEOC

charge. In fact, when she filed the charge, the events giving rise to those claims had not yet occurred. The court must determine whether it must consider those claims in ruling on this motion.

As a general rule, a Title VII plaintiff may not bring claims in a lawsuit that she did not first assert in an EEOC charge. *Flaherty v. Marchand*, No. 00 C 565, 2001 WL 1242884, at *2 (N.D. Ill. Oct. 17, 2001) (citing *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). There is, however an exception to this rule. A plaintiff may assert a claim in her complaint that she did not include in her EEOC charge if she can satisfy a two-prong test: (1) the claim must be "like or reasonably related to" her EEOC charge, and (2) the claim must be one that would "reasonably develop from an EEOC investigation into the original charge." *Flaherty* at *2 (citing *Harper*, 45 F.3d at 148). Applying this test, the court concludes that it must consider Raymond's claims of retaliation regarding the City's refusal to promote her to captain and the May 2001 commander appointment.

As for the first prong, in the Seventh Circuit, a claim in a plaintiff's complaint is reasonably related to her EEOC charge if there is some factual relationship between the two claims. *Flaherty*, at *2 (citing *Harper*, 45 F.3d at 148). At a minimum, the complaint and the EEOC charge must "'describe the *same conduct* and implicate the *same individuals*.'" *Smolek v. Palos Park Police Dep't*, No. 99 C 8001, 2001 WL 699946, at *2 (N.D. Ill. June 21, 2001) (emphasis added) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). Here, both the complaint and EEOC charge allege that Hilliard refused to promote Raymond in retaliation for her obtaining a promotion by court order and filing charges against the

Department. Thus, the complaint and EEOC charge implicate the same individual – Hilliard – and the same conduct – not promoting Raymond in retaliation for the same protected activity. Therefore, the court finds that Raymond's claims in her complaint regarding promotion to captain and the May 2001 commander appointment are reasonably related to her EEOC claims regarding promotion to an exempt position. *See Smolek*, at *3 (concluding that the first prong of the test was satisfied where all of plaintiff police officer's claims named local police chief as the decision-maker and alleged that he was being retaliated against for filing claims of discrimination against the police department).

As for the second prong, the Seventh Circuit has noted that it is difficult for courts to determine when a claim would reasonably develop from an EEOC investigation because it requires a court to speculate as to what the EEOC might or might not discover in an investigation. *Smolek*, at *3 (quoting *Cheek*, 31 F.3d at 500). This speculation is limited, however, to events that occurred during the pendency of the charge before the EEOC. *Hemmige v. Chicago Pub. Sch.*, 786 F.2d 280, 283 (7th Cir. 1986). The court concludes that the EEOC investigation into Raymond's claim regarding the February 2000 commander appointment could not have revealed her claims regarding not being promoted to captain or her claim regarding the May 2001 commander appointment because the events giving rise to those claims occurred after the EEOC concluded its investigation and issued Raymond's right to sue letter on October 20, 2000. The claims regarding the December 2000 and January 2001 captain promotions and the May 2001 commander appointment thus fall outside the scope of Raymond's July 17, 2000 EEOC charge and are not properly before the court. *See Dhaliwal v. Woods Div., Hesston Corp.*,

86 C 20375, 1989 WL 97842 (N.D. Ill. July 11, 1989) (holding that an event that occurred after the EEOC issued a right to sue letter was not within the scope of the EEOC charge because it could not have been within the scope of the EEOC's investigation). In any event, even if Raymond's claims regarding promotion to captain as well as her claim regarding the May 2001 commander appointment were properly within the scope of her July 17, 2000 EEOC charge, all three of those claims would fail on their merits because (1) Raymond fails to establish a *prima facie* case for retaliation, as discussed *infra* Sect. II.C.2 and (2) she fails to establish that the City's stated non-discriminatory reasons for her not being promoted were pretextual, as discussed *infra* Sect. II.C.4.. Thus the court grants the City's motion for summary judgment as to Raymond's claims regarding the December 2000 and the January 2001 promotions to captain and the May 2001 commander appointment.

## C.    Raymond's Title VII Retaliation Claim

The only one of Raymond's claims properly before the court is her claim that she should have received the February 2000 commander appointment. The City argues that it is entitled to summary judgment because Raymond has failed to establish a *prima facie* case of retaliation insofar as she has not proven a causal connection between her protected activity and the adverse employment action. Raymond responds that she is not required to prove causation and that, consequently, she has established her *prima facie* case. The court agrees with the City.

Title VII prohibits an employer from retaliating against an employee who has made a charge of discrimination. 42 U.S.C. § 2000e-3(a). In this case, Raymond provides no direct evidence that the City was retaliating against her. Consequently, the court will analyze her claim

16

under the burden-shifting approach. *See Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001) (noting that plaintiff who had presented no direct evidence of retaliatory intent had to proceed under the burden-shifting approach). Under the burden-shifting approach, the plaintiff must first establish a *prima facie* case. *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir. 2001). If the plaintiff is able to establish a *prima facie* case, the defendant may avoid liability by articulating a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant is able to do so, the burden then shifts back to the plaintiff, who must prove that the defendant's allegedly nondiscriminatory reason was merely pretextual. *Id.* The court will first resolve the parties' dispute as to the elements of a retaliation claim and will then determine whether Raymond has established a *prima facie* case.

### 1.  **Elements of a Title VII retaliation claim**

The parties disagree as to the elements of a *prima facie* case for Title VII retaliation in the Seventh Circuit. The City argues that, in order to establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse employment action subsequent to her participation in that activity; and (3) there was a causal link between the adverse action and the protected activity. Raymond argues that she need not prove a causal connection between the protected activity and the adverse employment action. The court agrees with the City.

The Seventh Circuit has consistently required a Title VII retaliation plaintiff to establish a causal connection between her protected activity and any adverse employment action. *See e.g. Lalvani*, 269 F.3d at 11 (requiring retaliation plaintiff to prove protected activity, adverse

employment action, and causal link between the two). *Accord Dunn*, 260 F.3d at 784; *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 653 (7th Cir. 2001); *Krause v. City of LaCrosse*, 246 F.3d 995, 1000 (7th Cir. 2001).

Raymond is unable to provide the court with any mandatory authority in support of her argument that no proof of causation is required in retaliation cases. Instead, Raymond cites only Judge Posner's concurring opinion in *Bourbon v. Kmart Corp.*, 223 F.3d 469, 473 (7th Cir. 2000) (Posner, J. concurring). The court will not follow a concurring opinion in the face of clear Seventh Circuit precedent on point. *See Ewing v. O'Brien*, 60 F. Supp. 2d 813, 819 (N.D. Ill. 1999) (refusing to follow a concurring opinion from a Supreme Court case because the Seventh Circuit had consistently held otherwise on the issue). Because Raymond's argument is unsupported by any mandatory authority and calls for a departure from clear Seventh Circuit precedent, the court finds her argument unpersuasive and concludes that she must, under Seventh Circuit law, prove a causal connection as an element of her *prima facie* case of retaliation. The court must now determine whether Raymond has satisfied all three elements of her *prima facie* case.

### 2.    Raymond's *Prima Facie* Case

In order to establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse employment action subsequent to her participation in that activity; and (3) there was a causal link between the adverse action and the protected activity. *Dunn*, 260 F.3d at 784. The City admits that (1) Raymond's filing of her April 12, 1995 EEOC charge and being a plaintiff in *Brown* are

protected activities under Title VII, and (2) the City admits that Raymond's not being promoted to captain or commander could constitute adverse employment actions.[5] The City argues that Raymond has not established a *prima facie* case for retaliation because she has not proven a causal connection between her participation in protected activities and the adverse employment actions.

To demonstrate a causal link in a retaliation case, the plaintiff must show that the employer would not have taken the adverse action "but for" the plaintiff's protected activity. *Dunn*, 260 F.3d at 784. The City offers two arguments to support its conclusion that Raymond has failed to prove a causal connection between her protected activities – filing her April 12, 1995 EEOC charge, being a plaintiff in *Brown*, and being promoted to lieutenant by court order – and the City's not promoting her. First, the City argues that Raymond has produced no evidence of causation. Second, the City argues that Raymond cannot create an inference of causation. Raymond does not oppose the City's arguments and relies solely upon her argument that she is not required to prove causation as part of her *prima facie* case. The court agrees with the City and concludes that Raymond has not demonstrated a causal link and, therefore, that she has not established a *prima facie* case.

---

[5] As discussed *supra* Sect. II.B.1., Raymond's claims based on the CBA are time-barred. Nevertheless, this claim would fail on the merits because, by defaulting on the City's Requests for Admission, Raymond has admitted that she suffered no detriment or adverse employment action as a result of the CBA. (Def.'s Req. for Admis. ¶ 52.) Furthermore, at Raymond's deposition, her attorney stipulated that she had not been injured and Raymond testified that she had been allowed to apply for promotion to Captain despite the two-year requirement. (Raymond's Dep. 118: 8-19.) Consequently, Raymond would be unable to succeed on the merits of her claim regarding the CBA as she would be unable to establish the second element of a *prima facie* case of retaliation: an adverse employment action.

### a.    Evidence of causation

The City argues that the undisputed facts prove that there is no evidence of a causal connection between Raymond's protected activities and the adverse employment actions because Hilliard did not even know about the protected activities.  Raymond does not oppose the City's arguments, nor does she provide evidence to support her argument that Hilliard knew about her filing the EEOC charge, being a plaintiff in *Brown*, and being promoted to lieutenant by Judge Gettleman's order.  Instead, she attacks the credibility of Hilliard's deposition testimony.  The court finds the City's arguments that Hilliard did not know about Raymond's protected activities convincing and thus need not address the City's other arguments on this point.

The Seventh Circuit has held that a retaliation plaintiff cannot establish a causal link when the person who made the decision that constituted the adverse employment action did not know about the plaintiff's protected activity.  *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000).  The court must determine whether Hilliard knew about Raymond's EEOC charges, her being a plaintiff in *Brown*, or her promotion to lieutenant by Judge Gettleman's order.  If he did not, then Raymond cannot establish the required causal connection.

Hilliard testified at his deposition that he did not know whether Raymond had ever filed an EEOC charge regarding the 1994 lieutenants' examination.  Hilliard testified that he never saw Judge Gettleman's court order in *Brown* prior to his deposition and that he learned about the decision from the general counsel.  According to the testimony of former Department Deputy Superintendent James Whigham, the general counsel announced the court-ordered merit promotions at a morning meeting but did not mention the names of the promoted personnel.  The

City argues that this evidence establishes that Hilliard was unaware of Raymond's protected activities and that, consequently, Raymond cannot establish causation in this case.

Raymond, instead of providing evidence that Hilliard knew about her April 12, 1995 EEOC charge, her being a plaintiff in *Brown*, or her being promoted to lieutenant by Judge Gettleman's order, argues that Hilliard's testimony is not credible. First, she argues that Hilliard's testimony that he did not know about her involvement in *Brown* was not credible. She offers no evidence in support of this argument and argues merely that the City's decision to oppose intervention in *Brown* was a major policy decision in which a jury would expect Hilliard to have been involved. Second, she argues that Hilliard's entire deposition – and, therefore, his testimony that he did not know about Raymond's April 12, 1995 EEOC charge, her being a plaintiff in *Brown*, or her promotion to lieutenant by Judge Gettleman's order – is not credible because of a series of inconsistencies that she claims diminish the credibility of his testimony. The court finds each of these arguments to be unpersuasive and will address each of them in turn.

First, Raymond's attempt to establish Hilliard's knowledge of Raymond's being a plaintiff in *Brown* or her promotion to lieutenant by Judge Gettleman's court order is unpersuasive. She argues that the City's decision to oppose intervention in *Brown* by all the merit promotees except for her was a major policy decision for the Department that a jury would expect to be made by Hilliard. Raymond, however, cites no evidence of the Department's decision-making structure regarding litigation strategy or any other evidence to support her argument. Accordingly, she has not met her burden of creating a disputed issue of fact as to

Hilliard's testimony that he did not know about Raymond's protected conduct. *See Schroeder*, 875 F.2d at 620.

Second, Raymond's series of attacks upon Hilliard's credibility, discussed in more detail, *infra* Sect. II.C.4., fail to create an inference that Hilliard was being untruthful when he stated that he did not know about Raymond's April 12, 1995 EEOC charge, her being a plaintiff in *Brown*, or her promotion to lieutenant by Judge Gettleman's court order. It is true that a fact-finder may infer intentional discrimination from an employer's untruthfulness. *Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 683 (7th Cir. 2001). Raymond fails, however, to support her arguments with sufficient evidence to establish that Hilliard's testimony was not true. *See id.* (stating that the court's only inquiry in reviewing a grant of summary judgment is "whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies."). Therefore, the court concludes that Raymond has failed to create an inference that Hilliard's testimony that he did not know about Raymond's April 12, 1995 EEOC charge, her being a plaintiff in *Brown*, or her promotion to lieutenant by Judge Gettleman's court order was not credible.

Consequently, the court finds that the evidence demonstrates that Hilliard did not know about Raymond's April 12, 1995 EEOC charge, her role as a plaintiff in *Brown*, or that she was promoted to lieutenant by Judge Gettleman's court order. Because Raymond cannot prove that Hilliard knew about Raymond's protected activities, the court concludes that Raymond has no evidence of a causal connection between her protected conduct and Hilliard's decision to not promote her. *See Maarouf*, 210 F.3d at 755. Even if, however, Raymond could establish that

Hilliard knew about her protected activities, too much time passed between those protected activities and Hilliard's promotion decisions to give rise to an inference of causation.

### b.   Inference of causation

The City argues that the amount of time that passed between Raymond's protected activities (filing her April 12, 1995 EEOC charge, joining the *Brown* litigation on December 5, 1995, and receiving her promotion on September 16, 1998) and the adverse employment action (the February 2000 commander appointment) was too great to support an inference that the protected activities caused the adverse employment actions. Raymond does not offer any arguments on this issue. The court agrees with the City.

The Seventh Circuit has acknowledged that the amount of time that passes between an employee's protected activity and an adverse employment action can create an inference of causation. *Lalvani*, 269 F.3d at 790. However, the longer the time between the protected conduct and the adverse employment action, the weaker the inference that the employer engaged in the adverse employment action due to the protected conduct. *Id.* In order for a plaintiff to establish a causal connection using only evidence of temporal proximity, the plaintiff must show that the employer's action followed fairly soon after the employee's protected conduct. *Hoffman-Dombrowski*, 254 F.3d at 653-54.

In this case, the promotion at issue occurred on February 1, 2000. This promotion occurred more than fourteen months after Raymond's promotion to lieutenant on November 6, 1998, almost five years after she filed her May 15, 1995 EEOC charge, and more than five years after she joined *Brown* as a plaintiff on December 5, 1995. Based upon Seventh Circuit

precedent, all three of these intervals of time are too long to raise an inference of causation. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) (holding that one year was too long an interval to raise an inference of retaliation). *See also Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (eight month interval too long to raise inference of retaliation); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five month interval too long). Consequently, the court concludes that, in this case, too much time passed between the protected conduct and the adverse employment actions to raise an inference of causation.

The undisputed facts do not support a conclusion that any of Raymond's protected activities caused Hilliard to pass her over for promotion. Therefore, Raymond cannot establish a *prima facie* case of retaliation. Accordingly, the court grants the City's motion for summary judgment.

### 3.   The City's legitimate reasons for not promoting Raymond

Even if Raymond could establish a *prima facie* retaliation case, the City has provided a legitimate, non-discriminatory reason to support the decision not to promote Raymond. *See Dunn*, 260 F.3d at 784 (noting that, under Title VII retaliation burden-shifting analysis, even if plaintiff can establish a *prima facie* case, defendant may avoid liability by articulating legitimate, nondiscriminatory reasons for its action).

The City argues that Hilliard had legitimate, non-retaliatory reasons for not promoting Raymond. Particularly, the City argues that, because appointments to captain and exempt ranks are discretionary, the Superintendent is entitled to promote personnel in whom he has confidence and who he believes share his goals for the Department. Furthermore, Hilliard has explained his

reasons for not promoting Raymond. Particularly, Hilliard testified that Raymond was not qualified for promotion because: (1) he did not believe that she shared his vision of the Department; (2) she did not have the necessary skills and expertise; (3) he did not consider her to be a team player; (4) he did not believe that she had the demeanor to interact with other officers and the command staff; (5) he did not believe that she had mentored and tutored young officers; and (6) he did not have sufficient confidence in Raymond.

Accordingly, the court concludes that the City has met its burden of production by articulating legitimate, non-discriminatory reasons for not promoting Raymond. The court must now determine whether Raymond satisfies her burden of proving that Hilliard's reasons for not promoting her were pretextual.

### 4.     Raymond's Pretext Arguments

Because the City has articulated non-retaliatory reasons for not promoting Raymond, the burden now shifts back to Raymond, who must prove that the City's stated reasons were merely pretextual. *See Dunn*, 260 F.3d at 784. Raymond argues that Hilliard's explanation for not promoting Raymond was not credible and that Hilliard's lack of credibility is probative circumstantial evidence that Hilliard's actual reasons for not promoting her were retaliatory. The City replies that Raymond's arguments are not properly supported because some facts that Raymond cites are supported only by Raymond's self-serving affidavit and other facts are not supported as required by Local Rule 56.1.

A court's only concern in determining whether an employer's articulated reasons are pretextual is whether the defendant honestly believed its reasons, regardless of whether those

25

reasons are trivial or even baseless. *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997). Mere proof by a plaintiff that the employer's assessment of her skills is incorrect is insufficient to establish pretext. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001). Instead, the plaintiff must prove that the employer lied about its explanations. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). It is true that a factfinder may infer intentional discrimination from an employer's untruthfulness. *See Alexander*, 263 F.3d at 683. However, a plaintiff still must provide evidence to support her arguments that the employer's stated reasons for the adverse employment action were not true. *Weisbrot v. Med. Coll. of Wis.*, 79 F.3d 677, 682 (7th Cir. 1996). The court must determine whether Raymond has supported her arguments with sufficient evidence to establish that Hilliard was lying, in order to determine whether she has succeeded in giving rise to an inference that the City was intentionally retaliating against her when she was not promoted. Raymond's arguments fail because (1) her self-serving affidavit is insufficient to support her attempts to rebut Hilliard's negative assessment of her qualifications and (2) her other arguments are not supported with any evidence.

### a. Raymond's Self-Serving Affidavit

Raymond's self-serving affidavit is insufficient to support her attempts to rebut Hilliard's negative assessment of her qualifications. It is established precedent in the Seventh Circuit that a non-moving party cannot defeat a motion for summary judgment with a self-serving affidavit devoid of any factual support in the record. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Similarly, the Seventh Circuit has held that "an employee's self-serving statements

about his ability ... are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Several of Raymond's arguments that seek to rebut Hilliard's testimony regarding her abilities are supported only by her own self-serving affidavit.

First, Raymond relies upon her affidavit to support her claims that her "vision" of the Department is the same as Hilliard's and that she is a "team player." Because Hilliard testified that Raymond does not share his "vision" and that she is not a "team player," Raymond must support her claims with evidence other than her self-serving affidavit. *See Gustovich*, 972 F.2d at 848.

Second, Raymond argues that she was selected to be "training coordinator" because of her skills in mentoring and training and that her "exceptional" job performance ratings as "training coordinator" reflect a high level of success in mentoring and training. She argues that this evidence contradicts Hilliard's testimony that she had not conducted training or engaged in mentoring. In support of these arguments, however, Raymond offers only her self-serving affidavit. She does not attach her evaluation or any other evidence to prove that her "exceptional" ratings were based upon her skills as a mentor and trainer. Therefore, although Raymond has established that she holds the position of "training coordinator," she has not provided a factual basis to support her claims of excellent mentoring and training skills.

Raymond argues that Hilliard's testimony that she does not possess the "skills and expertise" or the demeanor necessary for captain is contrary to the facts. As a lieutenant, Raymond had been assigned as acting watch commander, the primary duty of a captain, nearly

every other working day. She argues that, because no Department district commander ever criticized her performance as acting watch commander, she possesses the skills and expertise necessary for promotion to captain. She bases her argument that she possessed the demeanor to interact with other officers and command staff upon her self-described "success" as watch commander. Raymond, however, provides no evidence to support her positive self-assessment, which provides the sole basis for her argument. Meanwhile, the City submits Department disciplinary records to support its claims that, on two separate occasions, Raymond received criticism for her performance as watch commander. In the first incident, Assistant Deputy Superintendent Peska criticized Raymond for failing to process a civilian Department employee who had been arrested for driving under the influence. According to Peska, Raymond was "confused regarding her responsibilities as the watch commander investigating the situation." (Def.'s Resp. to Pl.'s Statement of Add'l Material Facts, Ex. 26.) Additionally, Raymond was reprimanded for being involved in a traffic accident outside the boundaries of her assigned district.

Raymond's self-serving affidavit is thus insufficient to call into question Hilliard's testimony that Raymond was not qualified for promotion.

### b. Raymond's Factually Unsupported Assertions

The rest of Raymond's arguments regarding Hilliard's credibility are totally without evidentiary support. A Title VII plaintiff cannot defeat summary judgment merely by questioning the credibility of the decision-maker's explanation for the adverse employment activity. *Giannopoulos v. Brach & Bock*, 109 F.3d 406, at 411 (7th Cir. 1997). Instead, the

28

plaintiff *must point to evidence* that suggests that the decision-maker did not honestly believe his own explanation. *Id.* (emphasis added). As discussed below, Raymond's arguments regarding Hilliard's truthfulness lack evidentiary support and are therefore unpersuasive.

First, Raymond argues that Hilliard's claim that she did not have sufficient operational experience to merit promotion to captain is inconsistent with her record of service with the Department. Raymond, however, takes Hilliard's claim out of the context of the rest of his deposition. In fact, Hilliard acknowledged, just a few lines later in the deposition, that Raymond had served in administrative and field positions, as had most of the other candidates for promotion to captain. Furthermore, although Raymond has established that she held field positions during her employment with the Department, she has not established that Hilliard's opinion that she had gained insufficient *experience* in those positions was not honestly-held. The court is, therefore, unpersuaded by Raymond's argument on this point. *See Baron v. City of Highland Park*, No. 97 C 1539, 1998 WL 901700, at *4 (N.D. Ill. Dec. 17, 1998) (stating court's conclusion in an employment discrimination case that plaintiff's reliance upon decision-maker's deposition testimony was misplaced because it was taken out of context).

Additionally, Raymond argues that the percentages of minorities promoted to captain by Hilliard contradict Hilliard's testimony that he did not consider race in making the promotions. In support of her arguments, Raymond cites the first four paragraphs of her Local Rule 56.1 statement. Those paragraphs, however, are not properly part of this record on summary judgment because they are not supported by citations to any evidence and, thus, do not comply with the local rule. *See* LOC. R. 56.1(b)(3) (requiring non-moving party to support her statement

of additional material facts with references to affidavits or other supporting materials). *See also Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 286 (7th Cir. 1997) (affirming the district court's refusal to consider portions of plaintiff's statement of additional facts that were not supported by specific references to evidence). The court thus disregards this argument as being without factual support.

The court finds that Raymond has not met her burden of bringing forth evidence that creates a disputed issue of material fact regarding Hilliard's stated reasons for not promoting her. Several of her claims were supported only by her self-serving affidavit and other claims were unsupported by any evidence. Because all her arguments were without factual support, they were insufficient to create an inference that Hilliard's deposition testimony was not credible and that he was trying to cover up discriminatory reasons for not promoting Raymond. *See Alexander*, 263 F.3d at 683. Accordingly, the court concludes that Raymond has not proven those stated reasons to be pretextual. Therefore, the court grants the City's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment.

Date: **FEB 0 5 2002**

James H. Alesia
United States District Judge